**JOHNSTON, Admr., Plaintiff, v. SWICKARD, et al., Defendants.**

Probate Court, Franklin County.

No. 61255.

Lee F. Johnston, Columbus, for Plaintiff.
Robert E. Bachman, Columbus, Guardian ad litem.
Boyd Haddox, Columbus, for Emma Swickard.
Chapin Beem, Columbus, for heirs.

## OPINION

By McCLELLAND, J.

This matter comes before the Court upon an application of the Administrator with the will annexed, and his supplemental petition thereto, asking for an order of sale of the real estate owned by the decedent, for the purpose of paying the decedent's debts.

The decedent, Peter Swickard, died leaving a last will and testament and several codicils thereto.

It appears from the records that the decedent, at the time of his death was the sole owner of one tract of land, and another trust of land contiguous thereto. He and his wife were co-owners of a third tract of farm land contiguous to the second above named; the three tracts making one entire farm, with a roadway running between the last two mentioned. He also was the owner of a private residence property in the Village of Gahanna.

By the terms of his will and the codicils thereto, he gave to his wife Emma E. Swickard the residence property in the Village of Gahanna in fee simple. The will also contains the following language:

"I also will and devise to her, my farm of about one hundred three (103) acres located in Plain Township, Franklin County, Ohio, on which we formerly lived, and which said farm

was deeded to me by Abraham P. Smith and wife, by deed executed March 15, 1867, and recorded in Deed Book 91, pages 229 et al., of the deed records of Franklin County, Ohio, for and during the term of her natural life".

The 103 acres included all of the two farms above named, which he owned in his own right. He then uses the following language:

"I also will and devise unto her my undivided interest in the adjoining farm comprising eighty-six and six one-hundredths (86.06) acres, located in Plain Township, Franklin County, Ohio * * * * for and during her natural life".

The will further provides that after the termination of the life estate of his wife in the first tract above mentioned, the remainder is given to his son Charles O. Swickard in fee simple. It further provides that the second tract above named, after the death of his wife is given to his son Wellington S. Swickard. It then further provides that his son Wellington S. Swickard should have the remainder after the termination of his widow's life estate in a tract of 20½ acres taken off the east side of the 86 acre tract owned by himself and his wife in common.

He then by Item 7 of his will devises a life estate to his wife in his undivided ½ interest in the 86 acre tract, being the third tract above mentioned, and at her death the remainder in said undivided interest should go to his daughter Laura Ellen Mahr in fee simple.

Immediately after this devise, he uses the following language:

"It is my intention in devising said twenty and one half (20½) acre tract out of said eighty-six (86) acre tract to my son Wellington S. Swickard, that my said son Wellington, and my said daughter, Laura may each have an equal one-half (½) portion of the total acreage of the two tracts above described, to-wit, forty-five and one-fourth (45¼) acres, and eighty-six (86) acres, as nearly as possible."

By a subsequent codicil the testator changed the devise to Charles O. Swickard from a fee simple estate to that of a life estate, and provided that after his decease, the property should go to "the heirs of his body by him begotten, to be divided equally between them, share and share alike. To have and to hold unto his said heirs in fee simple, their heirs, and assigns forever."

By another codicil he devises and changes the estate of Wellington S. Swickard in the property devised to him, from a fee simple to a life estate and also provides that after his decease, the property should go to the heirs of his body by him begotten, to be divided equally between them share and share alike.

And then by another subsequent codicil he changed the devise to Laura Ellen Mahr from a fee simple to a life estate, and provided that after her decease the said property should go to all the heirs of her body begotten to be divided equally between them share and share alike, to have and to hold unto them in fee simple, their heirs and assigns forever.

He then by a fourth and subsequent codicil uses the following language:

"It has become necessary for me, since the execution of my said will to borrow some money and secure the payment of same by a mortgage on some of the properties devised in my said Will and I hereby now declare my Will to be that any mortgage or mortgages so executed by me against any of the real estate devised in my said Will as a security for the payment of any sums of money that I may borrow be made a charge against the real estate so devised in my said Will to my three (3) said children, Laura Ellen Mahr, Charles O. Swickard and Wellington S. Swickard, and that the amount of such mortgage or mortgages be paid by my said three (3) children equally one third by each of them and that such equal one third part of such indebtedness be made an express charge upon the realty so in my Will devised to them."

The records disclose that the decedent, prior to his death executed a note and secured the payment of same by executing and delivering a mortgage on the first tract hereinbefore mentioned being one of the two tracts of which he was the sole owner. It therefore becomes apparent that the testator had created two successive life estates in all the farm land owned by him, and also created an estate in fee tail in the three tracts respectively devised to his three children. The record shows that the widow, acting under her statutory authority came into the court and filed her written election to take under the provisions of the husband's will.

The administrator, in his petition and his supplemental petition thereto, alleges that the testator devised not only his undivided interest in the third tract, but also that by the terms of his will and the election of the widow, the widow's undivided interest also passed under the will.

The widow has filed an answer denying the trust of said allegations, and also sets forth that the son Wellington S. Swickard is deceased and names his heirs. She also asks that the court construe the said will and that the court not authorize the administrator to sell the undivided interest of the widow in the eighty-six (86) tract above mentioned.

It therefore becomes incumbent upon this court to determine if possible the intent of the testator in making the above mentioned will.

Our attention is called to the language used in Item 7, of the original will, in which he uses the language above mentioned; conveying his undivided interest in the eighty-six (86) acre tract to his wife Emma E. Swickard. We must take the entire will and codicils thereto and examine same from all four corners thereof and in doing so, it is necessary that we take into consideration the next subsequent paragraph in which he explains his intention, and uses the following language:

"It is my intention in devising said twenty and one-half (20½) acre tract out of said eighty-six (86) acre tract to my son Wellington S. Swickard, that my said son Wellington, and my said daughter, Laura may each have an equal one-half (½) portion of the total acreage of the two tracts above described, to-wit, forty-five and one-fourth (45¼) acres, and eighty-six (86) acres, as nearly as possible."

If we add twenty and one-half (20½) acres to the forty-five (45) acres, we have a total of sixty-five and one-half (65½) acres of land which passes to Wellington S. Swickard. Then by taking the twenty and one-half (20½) acres from the eighty-six (86) acre tract, we have left the sum of sixty-five and one-half (65½) acres which passes to Laura Ellen Mahr. Assuming that the one-half interest therein of the wife passes under the will, it is very apparent to this court that it was the intention of the testator that each of his three children should have as nearly as possible an equal one-hird (1/3) of the farm land owned by him and his wife Emma E. Swickard.

This interpretation is also influenced by the provision made by the testator that any mortgage indebtedness on any of said tracts should be equally a charge on all three of the tracts owned by the testator. Whether this was the intention of the widow at the time her husband made the will we are unable to determine. There might have been some agreement between the testator and his widow that she was to devise her undivided interest to the daughter Laura, or there might have been an agreement between them that Laura should have had

th'e undivided interest.· This is something which we cannot take into consideration at this time. But it does appear to the court that it was the intention of the testator that the farm land owned by the husband and wife should be divided equally by metes and bounds between their three children.

Now what is the legal effect of such a devise after we have reached a conclusion as to the intention of the testator. We have examined the authorities submitted by counsel for the administrator, and also those submitted by counsel for Emma E. Swickard.

The authority relied upon chiefly by the administrator is the case of **Hibbs v Insurance Company,** reported in **40 Oh St Page 543.** Without going into the facts of the case, we wish to quote from Page 553 of the decision of the Judge as follows:

"The doctrine of election, as stated by an approved text writer, requires, that if a testator has effected to dispose of property which is not his own, and has given a benefit to the person to whom that property belongs, the devisee or legatee accepting the benefit so given to him must make good the testator's attempted disposition; but, if on the contrary he chooses to enforce his proprietary rights against the testator's disposition, equity will sequester the property given to him, for the purpose of making satisfaction out of it to the person whom he has disappointed by the assertion of those rights."

The court is also quoting Justice Welch in his opinion in the case of **Huston v Cone,** reported in **24 Oh St Page 11,** as follows:

"It is a well settled procedure of equity that where a will assumes to give to one of its beneficiaries property belonging to another person for whom provision is likewise made in the will, the latter is bound to elect whether he will claim the property so disposed of or take the provision made for him in the will, and that he cannot have both."

The court also refers to **Jennings v Jennings et al,** reported in **21 Oh St Page 56:**

"So firm is the principle that one cannot claim both under the will and adversely to it, that in disposing of that which is not his own, it seems to be immaterial whether the testator is acquainted with his want of title, or supposes that he is exercising a power of disposition that belongs to him".

We quote from the above decision as follows:

"The obligation imposed upon a party to choose between two inconsistent claims, in cases where it is the clear intention of the testator from whom he derives one, that he should not enjoy the benefits of both, rests upon the soundest principles of equity. Indeed, the doctrine of election is the peculiar subject of the jurisdiction of courts of equity. It is a creature of equity, although regulated by statute as to the time, place, manner, requisites and effect of the election. One of the main objects of the statute is to remove the fact of the widow's election from the domain of uncertainty; and that she may act deliberately and understandingly, she is allowed one year after the probate of the will, within which to make her election. But the doctrine of election is none the less of equitable origin because under statutory regulation."

The Justice then goes on to discuss the question whether the fact that the devisee as the widow makes any difference, and says that:

"It is no exception to the equitable rule which we have been considering, that the devisee or legatee is the widow of the testator."

This position is also supported by Page on Wills, in the text contained in 1196, and the statutes given in support thereof.

It is therefore the opinion of the court that the widow Emma E. Swickard in accepting the benefits of the will of her husband, must accept all of the benefits, and in doing so, must entirely comply with the terms of the will, and we are lead to the conclusion that in doing so she is estopped to deny that her husband devised her undivided interest in her daughter Laura Ellen Mahr, and that by taking under the will, the said widow and devisee Emma E. Swickard is now possessed of a life interest in all of said three tracts of land, and is also the owner in fee simple of the property in Gahanna devised to her by her husband.

It is also the opinion of the court that Laura Ellen Mahr is possessed of a life interest subsequent to that of her mother, in the 86 acre tract of land, less the 20½ acre tract devised to Wellington S. Swickard, and also that Wellington S. Swickard had a life interest in the second tract of the 20½ acres described in the will, and that at his death the same goes to the heirs of his body in fee simple.

We also find Charles O. Swickard has a life interest in the first tract after the death of his mother, and at his death, said tract goes to the heirs of his body.

We are also of the opinion that the mortgage existing at the time of the death of the testator is a charge equally upon the three tracts of land above described including the undivided interest in the 86 acre tract formerly possessed by Emma Swickard.

The court also is of the opinion that the debts of the estate are greater in amount than the personal property, and that it is necessary for the property to be sold for the payment of the decedent's debts, and that the sale shall include the undivided interest in the 86 acre tract formerly possessed by said Emma E. Swickard, and an order and decree may be drawn accordingly.